UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| SHAWNA K. DILLINGER | ) | |
| o/b/o TIMOTHY RAYMOND DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:16-CV-544-PPS-MGG |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Shawna K. Dillinger, on behalf of her deceased brother, Timothy Raymond Davis, appeals the Social Security Administration's decision to deny Davis's application for disability insurance benefits. An administrative law judge found that Davis was not disabled within the meaning of the Social Security Act. Dillinger raises a number of challenges to this determination, including that the ALJ's determination that Mr. Davis did not have an impairment that meets or medically equals the severity of a listed impairment is not supported by substantial evidence. Because I find that the ALJ failed to adequately support his Step Three determination, I will reverse and remand on the issue.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, as defendant in this suit.

**Background**

Davis was 44 years old at the time of his hearing. [DE 13 at 54.] He was a high school graduate. [A.R. at 55.][2] At the hearing, Davis testified along with a vocational expert. Davis testified that his last day of work was July 31, 2011. [*Id.* at 48-49.] He worked at the same company for eighteen years, where he was a machine operator and, in his last year, forklift driver. [*Id.* at 49-50.] As part of his responsibilities as a machine operator, he had to pick up product, which was a foil laminated lid, that, on average, weighed around 10 pounds, but the heaviest one could be up to 40 pounds and he was on his feet all day. [*Id.*] As a forklift operator, he sometimes had to lift a 70 pound rubber block up to his head. [*Id.* at 51.] Davis had carpal tunnel surgery on both hands in 2010, after which they seemed to get worse. [*Id.*] He testified that he stopped working because his carpal tunnel syndrome ultimately kept him from doing the job. [*Id.*] He said that he has great difficulty driving if it is for over 20 miles and can reach, but "can't pick anything up really." [*Id.* at 55-56.] He later testified that he could pick change off of a table or button buttons if it was a "small amount," but otherwise his hands would cramp up and close and he would be unable to use them. [*Id.* at 62.]

Of particular importance for present purposes, Davis testified that he suffers from seizures when he sleeps and also had a few concussions from slips and falls and

---

[2]The administrative record is found in the court record at docket entry 11, and consists of 715 pages. I will cite to its pages according to the Social Security Administration's Bates stamp numbers rather than the Court's Electronic Case Filing page number.

car accidents. [*Id.* at 57.] Davis had four seizures while he was awake but had seizures roughly every other night that would wake up him and make him dizzy and sometimes sick to his stomach. [*Id.*]

When asked to describe what a typical day was like for him, Davis testified that he feeds his two dogs, tries to do some laundry if he needs to, puts dishes in the dishwasher, and will go out and get the mail. [*Id.* at 63.] When asked if he does any cooking, he said that most everything he eats comes out of the microwave. [*Id.*]

The ALJ issued a decision denying benefits. [*Id.* at 25-44.] At Step One, the ALJ found that Davis met the insured status requirements of the Social Security Act and that he has not engaged in substantial gainful activity since July 23, 2011, the alleged onset date. [*Id.* at 31.] At Step Two, the ALJ concluded that Davis suffered from bilateral carpal tunnel syndrome and epilepsy. [*Id.*] At Step Three, the ALJ determined that these various impairments did not meet or medically equal the severity of one of the listed impairments. [*Id.* at 32.] Next, the ALJ found that Davis has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b). [*Id.*] Given the RFC assigned by the ALJ, and based on the testimony of a vocational expert, the ALJ concluded that Davis was not capable of performing past relevant work but that there are jobs that exist in significant numbers in the national economy that Davis could perform.

**Discussion**

My review of the Commissioner's decision is limited and I must be deferential to the ALJ's findings. An ALJ's findings of fact must be upheld if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The ALJ does not have to review every piece of evidence, but must provide a "logical bridge" between the evidence and conclusions. *Terry v. Astrue*, 580 F.3d 471, 474 (7th Cir. 2009). When an ALJ denies disability benefits but fails to adequately support his conclusions, the decision must be remanded. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Specifically, the ALJ's reasoning must be sufficiently articulated to permit meaningful review. *See Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). I must only consider the evidence pointed out by the ALJ in his written decision. *See Jelinek*, 662 F.3d at 811 ("[W]hat matters are the reasons articulated *by the ALJ*.").

Dillinger makes two arguments as to how the ALJ erred, but I will focus on her claim that the ALJ's finding that Davis did not have an impairment that meets or medically equals the severity of a listed impairment is not supported by substantial evidence. [DE 16 at 16.] In his opinion, the ALJ found that Davis's epilepsy does not meet the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1, and noted, albeit in a conclusory way, that he specifically considered the requirements of Listings 11.02 and 11.03. [A.R. at 32.] These Listings were revised after the ALJ's opinion was issued and this action was filed. For purposes of this Opinion, when I refer to Listings 11.02 and 11.03, I am referring to them as they existed before they were revised. Listing 11.02 provides:

> Epilepsy—convulsive epilepsy (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment.
> A. Daytime episodes (loss of consciousness and convulsive seizures) or
> B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

Listing 11.03 provides:

> Epilepsy—nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration in awareness or loss of consciousness and transient postical manifestations of unconventional behavior or significant interferences with activity during the day.

*See Neurological Listings from 12/15/04 to 9/28/16*, Program Operations Manual System (POMS), *available at* https://secure.ssa.gov/poms.nsf/lnx/0434131013 (list visited Aug. 8, 2017).

In his Step Three analysis, the ALJ found that "the record does not contain clinical findings or test results that meet the level of severity required by any of the

neurological listings. In addition, no treating or examining physician has mentioned findings that would equal the criteria of any of the listed impairments." [A.R. at 32.] The problem with the ALJ's finding is that there is substantial evidence in the record that potentially supports a finding that Davis's epilepsy met the severity of one of the Listings, but the ALJ either did not discuss it or noted it, but did not sufficiently explain why he discounted. In fact, beyond what I've quoted above, the ALJ never explicitly discussed how and why Davis failed to meet the criteria of those Listings, failing to create a logical bridge between the evidence and his determination.

For example, in his opinion, the ALJ notes that "[n]umerous EEGs were abnormal" and "that a recent EEG showed epileptiform discharges." [A.R. at 34.] In her opening brief, Dillinger expands on this point and cites to and quotes almost two pages worth of clinical findings and test results that Dillinger asserts verify Davis was having epileptic seizures on a regular basis, even more often than Davis realized. [DE 16 at 12-14.] And that is saying something since Davis testified he was having a seizure roughly every other night. I am not a doctor and, therefore, cannot and must not try to interpret the meaning of these test results and whether they actually indicate the type of seizure pattern and severity contemplated by Listings 11.02 and 11.03. Rather, that is a job for the ALJ. The ALJ, however, failed to explain why, despite this evidence, he concluded that Davis's epilepsy did not equal the severity of Listing 11.02 and 11.03. It very well could be that those test results are not significant, but it is the ALJ's duty to

6

connect the evidence and his own conclusions, not mine. *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

Furthermore, both Listing 11.02 and 11.03 require a claimant to experience seizures "in spite of at least 3 months of prescribed treatment." The ALJ noted in his opinion that Davis testified that he was taking only two medications, one for his blood pressure and one for his stomach. When asked at his hearing before the ALJ, "Are you taking a number of medications right now, Tim?," Davis responded, "A blood pressure pill and a pill for my stomach." [A.R. at 60-61.] Davis never was asked directly whether he was or ever had taken medication for his epilepsy. But the record indicated that he had. Davis's mother indicated that Davis was taking Gabapentin three times per day to control his seizures. [*Id.* at 33.] In addition, Davis's Medication Sheet from the Knox Winamac Community Health Center also notes that Davis was on seizure medication, which the ALJ does not address in his opinion. To be clear, the ALJ does not have to discuss in depth every piece of evidence, but he "must provide an 'accurate and logical bridge' between the evidence and the conclusion . . . so that 'as a reviewing court, we may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'" *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)). This reasoning must be provided by the ALJ. *Jelinek*, 662 F.3d at 812; *see also Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("[W]hile there is enough evidence in the record to support the decision,

7

the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."). It is unclear how, if it all, the ALJ weighed the evidence regarding Davis's use of medication in concluding that his epilepsy did not meet or medically equal the severity of one of the Listings.

In addition, during his brief Step Three analysis, the ALJ summarily explains in support of his conclusion that no treating or examining physician has mentioned findings that would equal the criteria for any of the listed impairments and does not acknowledge until later in his opinion, during his RFC analysis, that the Social Security Administration's consultative examining physician opined that "given the history of seizures which did not appear to be under control at this time he would not be a candidate for gainful employment." [A.R. at 326, 35 (citing A.R. 326).] The ALJ gave this portion of Dr. Pithadia's opinion "no special significance," explaining that whether the claimant can work is an issue reserved to the Commissioner. [*Id.* at 35.] While the ALJ is correct that Dr. Pithadia's ultimate conclusion that Davis was not a candidate for gainful employment is not one that is binding on the ALJ, that does not mean that the ALJ cannot and should not consider the underlying facts supporting Dr. Pithadia's conclusion; specifically that Davis's seizures were not under control and could be (or were) severely disruptive to Davis's daily activities. To me it seems unfair to simply ignore those facts and assert in such a conclusory manner that no treating or examining

physician has mentioned findings that would equal the criteria for any of the listed impairments.

As a final matter, I will note that during his RFC analysis, the ALJ discussed evidence that lends support to his conclusion, including Davis's testimony that he drove to the hearing, could drive for twenty miles at one time, could use a computer for thirty minutes, could reach, feeds his dogs, does laundry and dishes, prepares simple meals, and could pick up change and buttons. [*Id.* at 32.] I am not remanding this case because I do not think there was any evidence to support the ALJ's determination. Rather, the ALJ's brief explanation of his determination does not permit meaningful review and would impermissibly require me to scour not only his opinion, but also the entire administrative record, to attempt to understand how he arrived at his conclusion. As such, I must remand this action on the issue of the ALJ's determination at Step Three. Because this ground already requires remand, I will not address Dillinger's remaining arguments, but the ALJ should consider and address them as appropriate.

## Conclusion

For the reasons stated above, the ALJ's decision denying benefits is **REVERSED** and this cause is **REMANDED** for further proceedings consistent with this Opinion and Order.

**SO ORDERED**.

ENTERED: August 22, 2017.

       s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**